IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NATIONAL ASSISTED LIVING RISK RETENTION GROUP, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| INTEGRITY-HERMITAGE RETIREMENT CENTER, LLC (d/b/a HERMITAGE RETIREMENT CENTER); INTEGRITY SENIOR PROPERTIES INVESTMENTS, LLC; INTEGRITY-ROCKINGHAM, LLC; LOR HEALTHCARE MANAGEMENT, LLC; INTEGRITY SENIOR HEALTH CARE MANAGEMENT, LLC; and THE ESTATE OF LADDIE JOEL MCKENZIE, by its Administrator CORNELIA BAKER MCKENZIE, | ) | 1:25-cv-433 |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

This is an action by Plaintiff National Assisted Living Risk Retention Group, Inc., ("National Assisted Living"), for a declaratory judgment, pursuant to 28 U.S.C. § 2201. National Assisted living brings this action to determine its duty to defend its policyholders in a state court lawsuit ("the underlying lawsuit") concerning the death of Laddie Joel McKenzie ("Mr. McKenzie"). Before this court is a Joint Motion for Judgment on the Pleadings by Defendants Integrity-Hermitage

Center, LLC ("Integrity Hermitage"), Integrity Senior Properties Investments, LLC ("Integrity Senior Properties"), Integrity-Rockingham, LLC ("Integrity-Rockingham"), Integrity Senior Health Care Management, LLC ("Integrity Senior Health"), and LOR Healthcare Management, LLC's ("LOR Healthcare") (collectively, "Insured Defendants"), and Defendant Estate of Laddie Joel McKenzie, by its Administrator Cornelia Baker McKenzie ("Estate Defendant"), (Doc. 24), and Plaintiff National Assisted Living's Motion for Judgment on the Pleadings, (Doc. 26). For the reasons stated herein, Defendants' Motion will be granted, and Plaintiff's Motion will be denied.

## I. **FACTUAL BACKGROUND**

National Assisted Living issued two policies to Integrity-Hermitage, effective June 30, 2022, to June 30, 2023 ("the 22-23 policy") and June 30, 2023, to June 30, 2024 ("the 23-24 policy"). (Doc. 1 at 5.)[1] Defendants Integrity Senior Properties, Integrity-Rockingham, LOR Healthcare, and Integrity Senior Health were listed as "[a]dditional [i]nsured." (Id. at 6.) Both policies included a Commercial General Liability Form and a Long Term Facility Professional Liability Coverage Form

[1] All citations in this Memorandum Opinion and Order to documents filed with this court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

("Professional Liability Form"). (Id. at 6.) And both policies had a retroactive date of December 31, 2016. (Doc. 1-2 at 2; Doc. 1-3 at 2.)

The Commercial General Liability Form provided coverage for "bodily injury" and "property damage" that was "caused by an 'occurrence'" that "did not occur before the Retroactive Date . . . or after the end of the policy period," so long as a "'claim' for damages because of the 'bodily injury' or 'property damage' is first made against any insured . . . during the policy period or any Extended Discovery Period . . . ." (Doc. 1-2 at 5; Doc. 1-3 at 5 (internal quotation marks omitted).) A "bodily injury" was defined as "bodily injury, sickness or diseased sustained by a person, including death resulting from any of these at any time." (Doc. 1-2 at 18; Doc. 1-3 at 18 (internal quotation marks omitted).) And an "occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 1-2 at 19; Doc. 1-3 at 19 (internal quotation marks omitted).)

The Professional Liability Form provided coverage for injuries "caused by a 'medical incident'" that "did not occur before the Retroactive Date . . . or after the end of the policy period" so long as a "'claim' for damages, with respect to the

injury, is first made against any insured . . . during the policy period or an Extended Discovery Period . . . ." (Doc. 1-2 at 22; Doc. 1-3 at 23 (internal quotation marks omitted).) In the definitions section of the policy, a "medical incident" was defined as "any act or omission[ ] [i]n the providing or failure to provide professional health care, nursing care or long term care services to your patients . . . ." (Doc. 1-2 at 28; Doc. 1-3 at 29 (internal quotation marks omitted).) But an endorsement attached to the Professional Liability Form amended the definition of a "medical incident" to mean "any act or omission <u>occurring during the policy period</u>[ ] [i]n the providing of or failure to provide professional health care, nursing care or long term care services to your patients . . . ." (Doc. 1-2 at 31; Doc. 1-3 at 32 (emphasis in original and internal quotation marks omitted).)

Both the Commercial General Liability Form and the Professional Liability Form defined a "claim" and provided for "Extended Discovery Periods" in similar terms. A "claim" was defined as "a 'suit' or demand for monetary damages or services" because of a "bodily injury," or as "a 'suit' or demand by or for the injured person for monetary damages or services because of alleged injury to which this insurance applies." (Doc. 1-2 at 18, 28; Doc. 1-3 at 18, 29 (internal quotation marks omitted).)

And under both policy forms, a claim "will be deemed to have been made at the earlier of" either "[w]hen notice of such 'claim' is received by any assured and reported to [National Assisted Living]," or "[w]hen a 'claim' is made directly to [National Assisted Living] in writing." (Doc. 1-2 at 5, 22; Doc. 1-3 at 5, 23.) The Extended Discovery Periods applied if coverage was "canceled or not renewed" and "only to 'claims' for[ ] '[b]odily injury' . . . that occurs before the end of the policy period but not before the Retroactive Date" and lasted for "[o]ne year with respect to 'claims' because of 'bodily injury' . . . arising out of an 'occurrence' reported to [National Assisted Living], not later than 30 days after the end of the policy period." (Doc. 1-2 at 17; Doc. 1-3 at 17.) The Professional Liability Form provided similar coverage that applied "only to injury caused by a 'medical incident' which occurred after the Retroactive Date . . . and before the end of the policy period provided a 'claim' for such injury is first made during the Extended Discovery Periods," and it applied for the same amount of time as under the Commercial General Liability Form. (Doc. 1-2 at 27; Doc. 1-3 at 28.)

The policies also included a Limits of Insurance Endorsement that provided that "it is understood and agreed that a Claim insured under the Policy will be insured by one of the

following and only one of the following . . . [the] Long Term Care Facility Professional Liability subject to the terms of the [Professional Liability Form]. . . OR . . . [the] General Liability subject to the terms of the [Commercial General Liability Coverage Form]." (Doc. 1-2 at 36; Doc. 1-3 at 37.)

The underlying lawsuit concerns the death of Mr. McKenzie, a patient of Defendant Integrity Hermitage, who died on April 14, 2023, after he walked out a "unlocked, unalarmed door, where he fell over a second-story porch railing . . . ." (Doc. 1 ¶¶ 12–15.) Estate Defendant filed the lawsuit in Rockingham County, North Carolina on April 2, 2025. (Id. ¶ 11.) The suit named Insured Defendants Integrity Hermitage, Integrity Senior Properties, Integrity-Rockingham, LOR Healthcare, and Integrity Senior Health as defendants and alleged claims for "negligence per se, negligence, negligent hiring and supervision, medical negligence, administrative/corporate negligence, lack of informed consent, survival and wrongful death, and gross negligence/punitive damages." (Id. ¶¶ 11, 18 (cleaned up).)

Additional facts will be described herein as necessary.

## II. PROCEDURAL HISTORY

Plaintiff National Assisted Living filed this declaratory judgment action against Insured Defendants and Estate Defendant seeking a declaration that it has no duty to defend Insured

Defendants in the state court lawsuit. (Doc. 1 ¶¶ 50–52.) National Assisted Living argues that it does not owe a duty because the claim was made during the Professional Liability Form's Extended Discovery Period of the 2023-2024 policy, but the medical incident underlying the claim occurred during the 2022-2023 policy period, and the Extended Discovery Period only applied to medical incidents that occurred during the 2023-2024 policy period. (Id. ¶¶ 44–49.)

Insured Defendants and Estate Defendant both filed answers and counterclaims asserting defenses of ambiguity, illusory coverage, and violation of public policy and seeking declarations that National Assisted Living owes a duty to defend Insured Defendants. (Doc. 17 at 8, 15; Doc. 18 at 13, 23–25.)

Insured Defendants and Estate Defendants jointly move for judgment on the pleadings, arguing that Mr. McKenzie's death is covered by the Commercial General Liability Form; the Limits of Insurance Endorsement does not preclude defense under the Commercial General Liability Form; the Medical Incident Endorsement conflicts with other provisions of the policy and thus does not preclude defense under the Professional Liability Policy; and that the definition of a claim is ambiguous. (Doc. 24 at 2; see also Doc. 25.) Plaintiff responded in opposition,

(Doc. 31), and Insured Defendants and Estate Defendant replied, (Doc. 37).

Plaintiff also moves for judgment on the pleadings (Doc. 26), arguing that "based on the plain reading of the unambiguous terms of the [p]olicies," only the Professional Liability Form applies. (Doc. 27 at 10.) And because the medical incident occurred during the 2022-2023 policy period, but no claim was filed until the 2023-2024 policy's Extended Discovery Period, coverage is not available. (Id.) Insured Defendants and Estate Defendant jointly responded in opposition, (Doc. 32), and Plaintiff replied, (Doc. 36).

## III. STANDARD OF REVIEW

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). In a diversity case, a district court will apply the conflict of laws rules of the forum state. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941). North Carolina statutory law specifies that any policy insuring interests in North Carolina "shall be deemed" to have been made in and subject to the laws of North Carolina. N.C. Gen. Stat. § 58–3–1; see also Fortune Ins. Co. v. Owens, 132 N.C. App. 489, 512 S.E.2d 487, 489 (1999). Therefore, North Carolina insurance law and contract interpretation principles will be applied to the present matter. The parties also agree that North Carolina

law governs the interpretation of the insurance policies. (Id. at 9; Doc. 25 at 8.)

This court applies the same standard to a Rule 12(c) motion for judgment on the pleadings as to a Rule 12(b)(6) motion to dismiss. Occupy Columbia v. Haley, 738 F.3d 107, 115–16 (4th Cir. 2013). This court assumes the truth of all factual allegations in the complaint, draws all reasonable inferences in favor of the nonmoving party, and asks whether the complaint plausibly states a claim for relief. Id. In other words, the plaintiff must plead facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable" and demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Unlike on a Rule 12(b)(6) motion, however, on a Rule 12(c) motion the court may consider the Answer as well. Rinaldi v. CCX, Inc., No. 05-CV-108, 2008 WL 2622971, at *2 n.3 (W.D.N.C. July 2, 2008). The factual allegations of the Answer "are taken as true only where and to the extent they have not been denied or do not conflict with the complaint." Jadoff v. Gleason, 140 F.R.D. 330, 331 (M.D.N.C. 1991). "For the purposes of this motion [the defendant] cannot rely on allegations of fact contained only in the answer, including affirmative defenses, which contradict [the] complaint," because "Plaintiffs were not

required to reply to [the] answer, and all allegations in the answer are deemed denied." Id. at 332; see also Fed. R. Civ. P. 8(b)(6) ("If a responsive pleading is not required, an allegation is considered denied or avoided.").

When evaluating a Rule 12(c) motion, this court may consider only the pleadings, any exhibits thereto that are essential to the allegations, and matters of public record qualified for judicial notice. See Massey v. Ojaniit, 759 F.3d 343, 347 (4th Cir. 2014); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (stating that documents attached to the complaint may be considered "so long as they are integral to the complaint and authentic").

## IV. ANALYSIS

### A. Justiciability

An insurer seeking a declaratory judgment must demonstrate that it faces a concrete injury sufficient to show standing. A plaintiff must "allege a concrete injury that is 'actual or imminent, not conjectural or hypothetical.'" Trustgard Insurance Co. v. Collins, 942 F.3d 195, 199 (4th Cir. 2019) (citing Lujan v. Defs. Of Wildlife, 504 U.S. 555, 560 (1992)). Otherwise, a federal court runs the risk of rendering an advisory opinion. Id. (citing Spokeo, Inc. v. Robins, 578 U.S. 330, 337-38 (2016); MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126 (2007).)

Thus, a plaintiff bears the burden of showing it has standing. See Overbey v. Mayor of Baltimore, 930 F.3d 215, 226-27 (4th Cir. 2019).

In determining whether to proceed, the court must determine if the case is ripe for adjudication. See OOIDA Risk Retention Grp., Inc. v. Charity Cont. Hauling, LLC, 666 F. Supp. 3d 500, 505 (M.D.N.C. 2023). National Assisted Living is seeking a declaration that it has no duty to defend the parties in this case. District courts must be careful to "distinguish between the duty to defend and the duty to indemnify in determining whether each issue posed in a declaratory-judgment is ripe for adjudication." Adm. Ins. Co. v. Niagara Transformer Corp., 57 F.4th 85, 93 (2d Cir. 2023) (collecting cases). Pursuant to North Carolina law, the duty to defend is "broader than [the] obligation to pay damages incurred by events covered by a particular policy." Wm. C. Vick Const. Co. v. Great Am. Ins. Co., 52 F. Supp. 2d 569, 575 (E.D.N.C. 1999) (citing Waste Management of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 340 S.E.2d 374, 377 (1986)), aff'd sub. nom. Wm. C. Vick Const. Co. v. Great American Ins. Co., 213 F.3d 634 (4th Cir. 2000) (unpublished).

Here, the duty to defend claims allege a concrete injury and are ripe for adjudication. An underlying lawsuit is pending

in state court. (Doc. 1-1.) The Estate named Integrity-Hermitage, Integrity Senior Properties, Integrity Rockingham, LOR Healthcare Management, and Integrity Senior Healthcare as parties, (Id. at 4–7), and Integrity-Hermitage held an insurance policy with National Assisted Living, (Doc. 1-2.) Under North Carolina law, the filing of the state court lawsuit can trigger a duty to defend when an insurer has actual notice, as National Assisted Living does. See Kubit v. MAG Mut. Ins. Co., 210 N.C. App. 273, 293, 708 S.E.2d 138, 154 (2011). As such, this court finds it has jurisdiction to determine whether a duty to defend exists against National Assisted Living.

**B. Court's Discretion**

And even if standing is demonstrated, a court must consider whether it should exercise its discretionary jurisdiction under the Declaratory Judgment Act. Trustgard, 942 F.3d at 201-02 (citing Wilton v. Seven Falls Co., 515 U.S. 277, 289-90 (1995); Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 376-77 (4th Cir. 1994)). Whether the court should do so is subject to the same legal analysis as justiciability but can turn on whether the question is sufficiently concrete. An insurer who contends it has no duty to defend generally can either defend a claim tendered to it under a reservation of rights or seek a declaratory judgment that it has no obligation to defend. Id. at

200 (citing Medical Assur. Co., Inc. v. Hellman, 610 F.3d 371, 381-82 (7th Cir. 2010)). National Assisted Living has actual notice of the state court lawsuit and is defending it under a reservation of rights while seeking declaratory judgment, (Doc. 1 at 9), which is sufficient under North Carolina law to trigger the duty to defend, Kubit, 708 S.E.2d at 154. The court should therefore exercise its discretion to decide the declaratory judgment action.

### C. Duty to Defend

National Assisted Living seeks a declaratory judgment against Defendants determining that it does not owe them a duty to defend the underlying lawsuit. Both Insured Defendants and Estate Defendant filed counterclaims seeking a declaratory judgment against National Assisted Living determining that it owes a duty to defend Insured Defendants in the underlying lawsuit.

The duty to defend, in the insurance context, arises "when the claim against the insured sets forth facts representing a risk covered by the policy." Wm. C. Vick Const. Co. 52 F. Supp. at 578 (citing Fieldcrest Cannon, Inc. v. Fireman's Fund Ins. Co., 124 N.C. App. 232, 477 S.E.2d 59, 66 (1996)). This is determined by what North Carolina courts call the "comparison test," where "the pleadings are read side-by-side with the

policy to determine whether the events as alleged are covered or excluded." Waste Mgmt. of Carolinas, 340 S.E.2d at 378. "[T]he facts alleged [in the pleadings] are to be taken as true and compared to the language of the insurance policy." Kubit, 210 N.C. App. at 278, 708 S.E.2d at 144 (quoting Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 364 N.C. 1, 692 S.E.2d 605, 610 (2010)). "When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." Waste Mgmt. of Carolinas, 340 S.E.2d at 377. This is true even if the facts alleged in the complaint are groundless, false, or fraudulent accusations. Id. at 378.

Only "if the facts are not even arguably covered by the policy" can an insurer be excused from its duty to defend. Kubit, 708 S.E.2d at 144 (citing Waste Mgmt. of Carolinas, 340 S.E.2d at 378). "If the facts, as alleged in the complaint, could support liability under the policy, then a duty to defend arises on the insurer's part . . . [and] any doubt as to coverage is to be resolved in favor of the insured." Peerless Ins. v. Strother, 765 F. Supp. 866, 869 (E.D.N.C. 1990) (citing Waste Mgmt. of Carolinas, 340 S.E.2d at 378). And even where the complaint fails to assert claims falling within the coverage

provided, an insurer's duty to defend may still be found where the insurer knows or could reasonably ascertain facts that, if proven, would be covered by the policy. Waste Mgmt. of Carolinas, 340 S.E.2d at 377. But the inverse is not true. New NGC, Inc. v. Ace Am. Ins. Co., 105 F. Supp. 3d 552, 568 (W.D.N.C. 2015) (citing St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co., 724 F. Supp. 1173, 1179 (M.D.N.C. 1989) (noting that an insurer may not exonerate itself of liability by concluding that no coverage exists despite the allegations of the complaint), aff'd, 919 F.2d 235 (4th Cir. 1990)).

Whether there is a duty to defend is a question of law. Great West Casualty Co. v. Packaging Corp. of Am., 444 F. Supp. 3d 664, 673 (M.D.N.C. 2020). And because there are no issues of fact to resolve, determination of the duty to defend is appropriate at the judgment-on-the-pleadings stage. See Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 414 (4th Cir. 2004) (concluding that the district court could address the insurance-coverage question without having to resolve factual disputes related to causation that would ultimately be determined in the underlying tort suit).

**1. Scope of Insurance Coverage**

National Assisted Living argues that only the Professional Liability Form of the insurance policies applies because

underlying lawsuit concerns a medical incident. (Doc. 27 at 10.) And because the underlying lawsuit was not filed during the policy period in which the medical incident occurred — as required by the amended definition of a medical incident — National Assisted Living argues coverage is not available. (Id.) Insured Defendants and Estate Defendant collectively argue that the Commercial General Liability Form of the insurance policies applies and provides coverage at the duty to defend stage. (Doc. 32 at 10–14; Doc. 25 at 10–17). Defendants also argue that the policy terms National Assisted Living relies on to preclude coverage under the Professional Liability Form are ambiguous, render coverage illusory, defeat their reasonable expectations, and violate public policy, (Doc. 25 at 17–24). Regarding the Commercial General Liability Form, National Assisted Living argues that the factual allegations underlying lawsuit fall within the definition of a medical incident under the Professional Liability Form, and because insurance policies dictate that only one form can provide coverage, there can be no duty to defend under the Commercial General Liability Form. (Doc. 31 at 4–5; see also Doc. 36 at 3–6.)

An insurance policy is a contract and therefore its plain terms and provisions govern the rights and duties of the contracting parties. Gaston Cnty. Dyeing Mach. Co. v. Northfield

Ins. Co., 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000). The goal "is to arrive at the insurance coverage intended by the parties when the policy was issued." Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 364 N.C. 1, 9, 692 S.E.2d 605, 612 (2010) (citation omitted); see also Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978) ("[The courts] may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein."). Terms explicitly defined in the agreement are given that meaning. Woods, 295 N.C. at 505-06, 246 S.E.2d at 777. And undefined, nontechnical words are given their ordinary meaning unless context clearly requires otherwise. Id. Any ambiguity is resolved against the insurance company. Id. North Carolina "follow[s] the rule that provisions of insurance policies and compulsory insurance statutes which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction." State Capital Ins. Co. v. Nationwide Mut. Ins. Co., 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986) (citations omitted). But exclusions from coverage are construed narrowly, favoring a finding of coverage. Id.

Plaintiff's arguments hinge on this court determining that Mr. McKenzie's death was the result of a "medical incident" —

which the policies define as an "act or omission" that occurred in the provision of, or failure to provide, "professional health care, nursing care, or long term care services" — thus triggering coverage under the Professional Liability Form.[2] (Doc. 1-2 at 28.) "Unlike general liability insurance, professional liability insurance is designed to insure against claims related to acts or omissions in the provision of professional services." Church Mut. Ins. Co. v. Lake Pointe Assisted Living, Inc., 517 F. Supp. 3d 467, 476 (E.D.N.C. 2021), aff'd, No. 21-1668, 2022 WL 2702427 (4th Cir. July 12, 2022). North Carolina courts define professional services as "an act or services arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." Id. (quoting Smith v. Keator, 21 N.C. App. 102, 105–06, 203 S.E.2d 411, 415) (cleaned up). And to determine

[2] The policies do not define the terms "professional health care, nursing care, or long term care services." (See Doc. 1-2 at 28–29; Doc. 1-3 at 29–30.) North Carolina courts and federal courts applying North Carolina law have interpreted the term "professional health care" as described infra. This court will interpret the terms "nursing care" and "long term care" to have a similar meaning, given their association in a list with the term "professional health care." See Fischer v. United States, 603 U.S. 480, 486–88 (2024) (determining the meaning of a word by looking to "the neighboring words with which it is associated") (quoting United States v. Williams, 553 U.S. 285, 294 (2008)).

whether an act arises out of specialized knowledge, "North Carolina Courts examine the nature of the act itself," not "the title of the person performing the act." Id. Furthermore, the Fourth Circuit has clarified that "medical incidents focus on providing services or treatment to a patient." Affinity Living Grp., LLC v. StarStone Specialty Ins. Co., 959 F.3d 634 (4th Cir. 2020)

The act at issue here is alleged to be a result of Insured Defendants leaving Mr. McKenzie "unsupervised, allowing him to wander[ ] out of an unlocked, unalarmed door" and onto the porch from which he fell. (Doc. 1-1 at 3, 50–60.) The underlying lawsuit alleges that the "staff at Hermitage who were assigned to care for [Mr. McKenzie] were smoking marijuana" on the night of his death and he was "locked out on the smoking porch via the faulty exit door." (Id. at 62.) National Assisted Living argues that these facts "allege[ ] a very specific, medical risk" because Mr. McKenzie was "not a visitor or other third party" but "a patient." (Doc. 31 at 7.) As such, National Assisted Living concludes, "the hazard addressed here involves the acts or omissions in providing professional health care, nursing care, or long term care services." (Id.) But "professional liability insurance does not cover all claims that arise out of everything merely associated with running an adult-care

facility." Church Mutual Ins. Co., 517 F. Supp. 3d at 478 (citing Hartford Fire, 606 F. Supp. 2d at 613).

As alleged, the various acts and omissions that led to Mr. McKenzie's death "do not involve specialized health-care knowledge, skill, or training and thus cannot constitute the type of professional health care services contemplated by [Insured Defendants'] insurance policy." Id. Instead, like the facts in Taylor v. Vencor, Inc., the facts here allege a failure to properly observe and supervise Mr. McKenzie. 136 N.C. App. 528, 530, 525 S.E.2d 201, 203 (2000). And "[s]uch behaviors are properly applied to the standards of ordinary negligence." Id. Indeed, North Carolina courts have "consistently excluded acts from the scope of health care 'professional services' where they did not involve medical judgment or skill even when such acts occurred in connection with the provision of health care professional services." Hartford Fire Ins. Co. v. St. Paul Fire & Marine Ins. Co., 606 F. Supp. 2d 602, 612 (E.D.N.C. 2009) (collecting cases and determining that behavioral rehabilitation provider's professional liability policy did not cover injuries sustained by a patient in a car accident while being transported by provider's employee). The same is true for the allegations in the underlying lawsuit about the faulty door, because "failures in the operation and management of the facility [are] decision-

making that does not involve specialized medical skill or knowledge." See Church Mutual Ins. Co., 517 F. Supp. 3d at 479. Accordingly, the Commercial General Liability Form's coverage for "bodily injury" applies to the claims raised in the underlying lawsuit.

National Assisted Living does not argue that any provisions of the Commercial General Liability Form would preclude coverage and a duty to defend should this court determine that it, rather than the Professional Liability Form, applies. (Doc. 31 at 4-5; see also Doc. 36 at 3-6.) National Assisted Living does not argue — as it does for the Professional Liability Form — that the claim was not filed in the necessary time frame for coverage under the Commercial General Liability Form, and this court will not make an argument for a party that it does not make for itself. United States v. Miller, 41 F.4th 302, 313 (4th Cir. 2022) ("[I]t is not our job to wade through the record and make arguments for either party." (internal quotation marks omitted)). As such, this court determines that National Assisted Living has a duty to defend Insured Defendants in the underlying lawsuit. National Assisted Living's motion for judgment on the pleadings will accordingly be denied, and Defendants' joint motion for judgment on the pleadings will be granted.

## V. CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Judgment on the Pleadings seeking a declaratory judgment that it has no duty to defend Insured Defendants, (Doc. 26), is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Joint Motion for Judgment on the Pleadings seeking a declaratory judgment that Plaintiff has a duty to defend them, (Doc. 24), is **GRANTED.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED.**

A judgment dismissing this action will be filed contemporaneously herewith.

This the 30th day of September, 2026.

United States District Judge